UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAY G. HELWIG,

Plaintiff,

v. 1:17-CV-0859 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

APPEARANCES: OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC
Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

IDA COMERFORD, ESQ.
KENNETH HILLER, ESQ.

U.S. SOCIAL SECURITY ADMIN.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

CATHARINE ZURBRUGG, ESQ.

William B. Mitchell Carter, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

On June 11, 2018, the parties consented, in accordance with a Standing Order to proceed before the undersigned. (Dkt. No. 12.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1974. (T. 68.) He completed high school. (T. 539.) Generally, Plaintiff's alleged disability consists of diabetes, learning disability, poor memory, depression, anxiety, carpal tunnel syndrome, bilateral tears in knees, and back problems. (T. 162.) His alleged disability onset date is October 16, 2011. (T. 68.) He previously worked as a dietary aide and dish washer. (T. 524.)

### B. Procedural History

On October 28, 2011, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 68.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 9, 2013, Plaintiff appeared with representation before the ALJ, Timothy J. Trost. (T. 35-60.) On July 2, 2013, ALJ Trost issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-34.) On January 28, 2015 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) The case was appealed to United States District Court Western District of New York and remanded by stipulation of the parties. (T. 650-654.) The AC ordered the ALJ to further evaluate Plaintiff's past relevant work and if necessary obtain evidence from a vocational expert. (T. 657-658.) On April 24, 2017, Plaintiff appeared with representation before the ALJ, Stephen Cordovani. (T. 533-588.) On June 14, 2017, ALJ Cordovani issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 511-532.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 517-526.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 28, 2011. (T. 517.) Second, the ALJ found Plaintiff had the severe impairments of obesity, degenerative disc disease of the lower back, diabetes mellitus with bilateral feet neuropathy, disorders of the bilateral knees, anxiety, depression, and borderline intellectual functioning. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 517-519.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> occasional ramps, stairs and balance; occasional bend, kneel, crouch, crawl; no ladders, ropes, or scaffolds; no extreme heat, cold, wetness or humidity; no work around unprotected heights, or dangerous moving mechanical parts; can understand, remember and carry out simple instructions and tasks; no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and processes; occasional interaction with supervisor, co-workers and the general public; and can perform jobs with math and language GED values no greater than 1.

(T. 520.) Fifth, the ALJ determined Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 524-525.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings. Plaintiff argues the ALJ failed in his duty to develop the record by failing to order a consultative intelligence examination in light of the evidence showing Plaintiff

had significant deficits in intellectual functioning and given the stale outdated nature of prior testing. (Dkt. No. 6 at 23-28.)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ properly evaluated Plaintiff's cognitive abilities and determined that Plaintiff did not meet a Listed impairment. (Dkt. No. 9 at 14-23.)

### C. Plaintiff's Reply

Plaintiff filed a response in which he reiterated his original arguments. (Dkt. No. 11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

Plaintiff argues the ALJ was obligated to order a consultative intelligence examination because the evidence in the record was not sufficient to base a decision particularly regarding whether or not Plaintiff met a Listing. (Dkt. No. 6 at 23-28.)

Here, the ALJ properly, and within his discretion, declined to order a consultative intelligence examination. Additional testing was not required because there were no inconsistencies in the record and the evidence in the record was sufficient to make a determination. Overall, the evidence in the record supported the ALJ's ultimate determination that Plaintiff's borderline intellectual functioning did not preclude him from substantial gainful employment.

In general, a consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. *Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 32 (2d Cir. 2013) (citing 20 C.F.R. § 416.919a(b)); *see Martinez v. Colvin*, 286 F. Supp. 3d 539, 543 (W.D.N.Y. 2017) (citing 20 C.F.R. § 404.1519a(b)(1)) ("An ALJ

may order a consultative examination when '[t]he additional evidence needed is not contained in the records of medical sources.'"). The ALJ has discretion to order a consultative examination to further develop the evidentiary record. *See Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) ("The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record."); *see Serianni v. Astrue,* No. 6:07-CV-250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010) (citing *Hughes v. Apfel,* 992 F.Supp. 243, 248 (W.D.N.Y.1997); *see* 20 C.F.R. § 416.917.

Failure to obtain a consultative examination where necessary for the ALJ to make an informed decision is remandable error. *Falcon v. Apfel,* 88 F.Supp.2d 87, 90-91 (W.D.N.Y. 2000). However, the ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it. *Tankisi*, 521 F.App'x at 32; *see also Lefever v. Astrue,* 5:07-CV-622, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd* 443 F. App'x. 608 (2d Cir. 2011).

Courts have found that an ALJ had sufficient information, and did not abuse his discretion in deciding not to order a consultative examination to assess plaintiff's intelligence, where evidence in the record supported the determination that plaintiff's intelligence impairment did not preclude him from performing substantial gainful employment. *See Cox v. Astrue*, 993 F. Supp. 2d 169, 178 (N.D.N.Y. 2012); *see Baker v. Colvin*, No. 1:15-CV-00388, 2017 WL 5589483, at *5 (W.D.N.Y. Nov. 21, 2017) (ALJ did not err in declining to order an intelligence examination where substantial other evidence, such as plaintiff's ability to graduate high school, ability to maintain

employment, and consultative examiner's opinion she could perform simple work, indicated plaintiff's intelligence did not preclude her from substantial gainful employment); *see Miller v. Colvin*, No. 6:15-CV-0552, 2016 WL 4402035, at *6 (N.D.N.Y. Aug. 18, 2016) (ALJ did not err in declining to order a consultative exam where there was substantial evidence that plaintiff did not suffer work related functional limitations); *see Krach v. Comm'r of Soc. Sec.,* No. 3:13-CV-1089, 2014 WL 5290368, at *9 (N.D.N.Y. Oct. 15, 2014) (ALJ had sufficient information and a consultative examination was not necessary where the ALJ was aware of plaintiff's education level, need for resource room help during her secondary education for math and reading, struggles with writing, and her alleged difficulty in understanding through reading); *see Simon v. Colvin*, No. 6:12-CV-6381, 2013 WL 4094612, at *7 (W.D.N.Y. Aug. 13, 2013) (ALJ did not err in failing to order consultative examination where the record was complete with notes from plaintiff's treating providers including therapy sessions and psychiatric evaluations).

Courts have also held an ALJ did not abuse his discretion in failing to order additional intellectual testing where a consultative examiner noted that although plaintiff appeared to be in the borderline to low average range of intelligence, the examiner went on to opine that the plaintiff was capable of performing the basic demands of unskilled work. *See Cox,* 993 F. Supp. 2d at 178 (ALJ did not err in failing to order an intelligence consultative exam where consultative examiner noted borderline intellectual functioning, however, she also found plaintiff had intact attention, concentration and memory, could perform simple calculations, counting, and serial 3s); *see Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-1235, 2016 WL 7971330, at *5 (N.D.N.Y. Dec. 29, 2016), *report and*

*recommendation adopted,* No. 15-CV-1235, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) (ALJ did not err in failing to order a consultative intelligence exam where consultative examiner noted borderline cognitive functioning, however, opined plaintiff was capable of performing the basic demands of unskilled work); *see Washington v. Astrue*, No. 5:12-CV-39, 2012 WL 6044877, at *3 (N.D.N.Y. Dec. 5, 2012); *see also Slater v. Comm'r of Soc. Sec.*, No. 5:14-CV-255, 2015 WL 6157396, at *4 (N.D.N.Y. Oct. 20, 2015).

However, Courts have remanded for intellectual testing where the record did not contain objective testing, plaintiff had significant educational difficulties (only completing the sixth grade), never held employment, and was unable to perform tasks such as learning to drive or manage finances. *Wallace v. Colvin*, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015); *see Dufresne v. Astrue*, No. 5:12-CV-00049, 2013 WL 1296376, at *1 (N.D.N.Y. Mar. 8, 2013), *report and recommendation adopted*, No. 5:12-CV-0049, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013) (ALJ failed to develop record by failing to order intelligence evaluation where record contained evidence of plaintiff's limited intellectual functioning, including plaintiff's failure to graduate from high school or obtain GED, and opinion of consultative examiner that plaintiff suffered from cognitive delays and estimating his intelligence to be in the deficient range); *see Laveck v. Astrue*, 2012 WL 4491110, *6 (N.D.N.Y. 2012) (ALJ failed to develop record by not ordering an intelligence exam where ALJ failed to discuss plaintiff's learning disability, plaintiff testified that she had poor school performance and consultative psychiatric exam suggested low average cognitive functioning); *see also Jarvis v. Colvin*, No. 6:15-CV-1016, 2016 WL 4148352, at *5 (N.D.N.Y. Aug. 4, 2016) (ALJ failed to discuss plaintiff's

cognitive functioning in the RFC determination, despite AC remand ordering ALJ to do so).

In his decision, the ALJ denied Plaintiff's request for additional intelligence testing. (T. 514-515.) The ALJ stated there was sufficient information in the record on which to base a decision. (T. 514.) The ALJ specifically noted, "there [was] no indication [in prior mental health treatment records] of any significant intellectual issues being claimed or diagnosed." (T. 515.) The ALJ noted Plaintiff's activities, such as writing poetry online, writing short stories and novels, and playing computer games on a daily basis, undermined issues of intellectual limitations. (*Id*.) The ALJ noted Plaintiff displayed excellent memory recall at the hearing. (*Id*.) Lastly, the ALJ noted Plaintiff's limited intellectual functioning was taken into account by consultative examiner, Renee Baskin, Ph.D. (*Id*., T. 241-244.)

As an initial matter, the record contains educational records and the results of an IQ test. (T. 207.) An Individualized Educational Program ("IEP") report dated April 6, 1992, contained the results of a WISC-R examination performed in September of 1988 when Plaintiff was approximately 14 years old. (*Id*.) The test yielded a verbal score of 80, a performance score of 81, and a full scale IQ score of 79. (*Id*.) Plaintiff asserts the IQ test score in the file was not sufficient for a determination regarding Plaintiff's intellectual functioning because the score was "stale and likely inflated." (Dkt. No. 6 at 24.) Plaintiff further asserts "such old testing would not be sufficient evidence [to make a determination], as the ALJ indicated" and "given the ALJ's reliance on stale, outdated and inaccurate IQ testing" remand is necessary. (*Id*. at 25, 28.) Plaintiff also argues IQ testing is "absolutely essential" in this case because new testing would "likely" reveal a

difference of a few points necessary for a finding that Plaintiff meets Listing 12.05. (Dkt. No. 6 at 27.)

Contrary to Plaintiff's assertion, the ALJ did not conclude Plaintiff's 1988 IQ scores were sufficient evidence upon which he could base a determination at any step in the sequential process. In fact, although the ALJ thoroughly analyzed Plaintiff's intellectual functioning in his determination, he did not reference the 1988 IQ scores. In his assessment of Plaintiff's intellectual functioning, the ALJ properly relied on Plaintiff's activities, his hearing testimony, and Dr. Baskin's opinion. (T. 515.) Therefore, Plaintiff's argument, that the ALJ erred in relying on outdated and stale evidence, is without merit.

Further, the ALJ was not obligated to obtain new IQ testing merely because the record contained "stale" IQ testing results and new test results could "likely" yield lower IQ scores as Plaintiff alleges. (Dkt. No. 6 at 25-27.) Ultimately, the ALJ had before him sufficient evidence upon which he could make a determination with respect to Plaintiff's mental impairments. Of note, Plaintiff was represented by counsel since 2011 and counsel did not request from the Administration, or independently seek, intelligence testing prior to 2017. (T. 70, 35-60, 201-204.) In a letter dated February 21, 2017, Plaintiff's counsel requested additional intelligence testing be performed. (T. 777.) At Plaintiff's 2017 hearing his counsel requested Plaintiff be sent for an intellectual evaluation because Plaintiff was in special education in high school and the psychological consultative examiner noted borderline intellectual functioning in his report. (T. 537.)

In assessing Plaintiff's intellectual impairment, and in making his overall mental RFC determination, the ALJ relied on Dr. Baskin's opinion and Plaintiff's activities. Dr. Baskin conducted a psychiatric evaluation on March 14, 2012. (T. 241-244.) On examination Dr. Baskin observed Plaintiff was responsive to questions and cooperative; his manner of relating, social skills, and overall presentation were adequate. (T. 242.) On exam, Plaintiff was appropriately, neatly, and casually dress; his grooming was fair; and his eye contact was appropriate. (*Id*.) Plaintiff's speech was described as fluent and clear, but rapid and pressured. (*Id*.) Plaintiff's thought process was observed to be coherent and goal-directed with no evidence of hallucinations, delusions or paranoia. (T. 243.) Plaintiff's affect was at full range and appropriate, his mood was euthymic, his sensorium was clear, and he was orientated. (*Id*.) Dr. Baskin observed Plaintiff's attention and concentration were "mildly impaired due to some anxiety or nervousness in the evaluation about the rudimentary tests and limited intellectual functioning." (*Id*.) She noted Plaintiff was able to do counting and simple calculations, but unable to do serial 3s. (*Id*.) Dr. Baskin observed Plaintiff's recent and remote memory skills were "mildly impaired" for the same reasons his attention and concentration were impaired. (*Id*.) Dr. Baskin noted Plaintiff's intellectual functioning was "estimated to be in the borderline range" and his general fund of knowledge was appropriate to experience. (*Id*.)

In a medical source statement, Dr. Baskin opined Plaintiff had "minimal to no limitations" in his ability to follow and understand simple directions and instructions, and perform simple tasks independently. (T. 244.) She opined Plaintiff would have "moderate limitations" in his ability to maintain attention and concentration, maintain a

regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress. (*Id*.)

Dr. Baskin performed a complete mental examination, took Plaintiff's history and ultimately opined his borderline intellectual functioning would not preclude him from performing the demands of simple, routine, repetitive work. Therefore, Dr. Baskin's opinion supported the ALJ's overall conclusion that Plaintiff's borderline intellectual functioning did not prevent Plaintiff from performing simple, routine, repetitive work.

The ALJ's RFC determination was further supported by Plaintiff's activities and ability to function in all aspects of his daily life. As outlined by the ALJ, Plaintiff had no problems with personal care and remained capable of preparing meals daily, doing laundry, using public transportation, shopping in stores, paying bills, reading, watching TV, socializing with his family, and playing computer games. (T. 518, 523.) Plaintiff testified he cared for pets, could walk for 45 minutes to go shopping, lived with and helped to care for his disabled spouse, wrote poetry, and wrote stories online. (T. 519, 523.) Further, despite his intellectual impairment, Plaintiff worked at substantial gainful employment levels. (T. 132, 524.) Such evidence further supports the conclusion that Plaintiff's intellectual impairment did not prevent him from performing work. Therefore there was sufficient evidence in the record upon which the ALJ could base his RFC determination. The ALJ's mental RFC was supported by substantial evidence in the record, Plaintiff's self-reports of daily activities and Dr. Baskin's opinion.

Because the record contained sufficient evidence for the ALJ to make a determination based on Plaintiff's borderline intelligence functioning, the ALJ properly declined Plaintiff's request that he order additional IQ testing. Further, Plaintiff's

assertion that IQ testing was necessary because testing might show he might meet a Listing is speculative at best

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 4, 2018

William B. Mitchell Carter
U.S. Magistrate Judge